IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNIVERSITY OF MARYLAND** | * | |
| **EASTERN SHORE NATIONAL** | * | |
| **ALUMNI ASSOCIATION, INC.** | * | |
| 30665 Student Services Center Lane | * | |
| Princess Anne, MD 21853 | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Case No. _____ |
| | * | |
| **SCHULTE HOSPITALITY GROUP, INC.** | * | |
| Serve: CSC-Lawyers Incorporating | * | |
| Service Company | * | |
| 7 St. Paul Street, Suite 820 | * | |
| Baltimore MD 21202 | * | |
| | * | |
| **Defendant** | * | **Jury Demanded** |

## COMPLAINT

University of Maryland Eastern Shore National Alumni Association, Inc., plaintiff, files this Complaint against Defendant, Schulte Hospitality Group, Inc. (hereinafter "Defendant") and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a Maryland corporation with its principal place of business in Princess Anne, Maryland.

2. Defendant, Schulte Hospitality Group, Inc. is an Illinois corporation with its principal place of business in Louisville, Kentucky, and operates hotels, motels, and other establishments which provide lodging to transient guests, including facilities known as Courtyard by Marriott located at 128 Troopers Way, Salisbury, MD 21804 and Residence Inn by Marriott located at 140 Centre Road, Salisbury, Maryland 21801.

3. This Court has jurisdiction over the parties and this Court is the appropriate venue for this proceeding because it is between citizens of different states and the amount in controversy is more than $75,000 exclusive of interest and costs. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because it involves federal Civil Rights statutes, and the Court may exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.

## FACTS COMMON TO ALL COUNTS

4. University of Maryland Eastern Shore, the State of Maryland's Historically Black 1890 Land- Grant Institution, is a teaching, research, and doctoral institution, and its undergraduate population has ranged from 57.5% to 74.2% underrepresented minority students in the past five years (https://www.usmd.edu/IRIS/Dashboard/Diversity-and-Inclusion/?view=UMES).

5. Plaintiff, University of Maryland Eastern Shore National Alumni Association, Inc., was founded in 1963 as "Maryland State College Alumni Association, Inc." with the purpose to "promote the interest and welfare of the Maryland State College, its alumni, and the college."

6. Plaintiff's current president, Teonna Wallop, was elected in 2022. Ms. Wallop is Black. One of the services that Plaintiff provides to alumni is securing rooms and obtaining a favorable rate with local hotels during UMES's annual Homecoming events. Most of Plaintiff's members travel from other parts of the State and from other states to attend Homecoming.

7. Homecoming had been held in February for 44 years but was changed to November in 2021-22. The 2023 Homecoming is scheduled for November 12 – 19, 2023.

8. In 2022, Defendant quoted rates much higher than its regular rates (as high as $876.00 per night for 2 Queen Beds from November 11, 2022 - November 13, 2022) at the Courtyard by Marriott property owned by Defendant located at 128 Troopers Way, Salisbury, MD 21804 on the dates of Plaintiff's 2022 Homecoming.

9. After the 2022 Homecoming, Ms. Wallop contacted Defendant's General Sales Manager, Patricia Shea, about reserving a block of rooms for plaintiff's members at the 2023 Homecoming. When discussing an alumni group event that Plaintiff was planning to hold at Defendant's Hotel, Ms. Shea indicated that there would be security at the hotel during Homecoming weekend, alleging that alumni had taken an item from a refrigerator in 2022 and claiming that there were more than 500 persons in the hotel lobby in 2022. She also stated that she wanted to ensure that there was no underage drinking in the lobby and would conduct checks to ensure that people who did not book a room that weekend, were not in the hotel. When asked whether she required hired security for the events of Salisbury University,[1] a similarly situated group that is not comprised principally of Black alumni, Ms. Shea stated that no security was required for them because they know how to come in, go to their rooms, and go to sleep. During Homecoming 2022, Ms. Shea directed a comment at Black alumni in the lobby that consisted of referring to the Black alumni as, "you people".

10. Ms. Wallop reported this discriminatory treatment to Ms. Shea's management. As a result of the complaints and after confirming that she received a reprimand for her comments, Ms. Shea, on behalf of Defendant, more than tripled the price of rooms for Plaintiff's Homecoming weekend in November 2023. In addition, whereas Ms. Shea had originally offered to rent room blocks to Plaintiff's members at the rate of approximately $105.00 per night, after Ms. Wallop lodged her complaint, Defendant (acting by and through Ms. Shea) raised the quoted rate to over $225.00 per night and changed the block of rooms that would be set aside for Plaintiff's members from 65 to 20 rooms. This rate is not consistent with the rates Plaintiff had received over the past three years which were in the range of $95.00-$98.00 per night. Additionally, Ms. Shea advised

---

[1] The undergraduate student population at Salisbury University has been around 68-70% White in the past five years (https://www.usmd.edu/IRIS/Dashboard/Diversity-and-Inclusion/?view=SU).

that the rate without a room block would be more than $400.00 per night which is higher than the rates Defendant is offering for the Salisbury University Homecoming in October and higher than rates offered for the entire month of November. When Plaintiff asked for a contract on several occasions to book the hotel block, Defendant never sent a contract. When alumni attempted to book the hotel rooms online for the Homecoming weekend, the dates were greyed out prohibiting them from booking.

## COUNT ONE:
## CIVIL RIGHTS ACT OF 1866 (42 U.S.C. § 1981)

11. Plaintiff incorporates Paragraphs 1 through 10.

12. Defendant's treatment, practices and policies directed toward Plaintiff and Plaintiff's members on the basis of race denied Plaintiff and Plaintiff's members the right to make and enforce contracts "as enjoyed by white citizens," in violation of 42 U.S.C.A. § 1981.

13. Through their actions and treatment of Plaintiff and Plaintiff's members, defendant intended to discriminate against plaintiff on the basis of the race of Plaintiff, Plaintiff's President, and Plaintiff's members.

## COUNT TWO
## 42 U.S.C.A. § 2000a

14. Plaintiff incorporates Paragraphs 1 through 13.

15. Defendant's failure and refusal to provide hotel accommodations to Plaintiff and Plaintiff's Members that was equal to that provided by defendants to persons of other races was a violation of 42 United State Code sections 2000a *et seq.* (42 U.S.C.A. §§ 2000a *et seq.*).

16. Plaintiff is informed and believes, and based on that information and belief allege, that Defendant has engaged in a pattern and practice of refusing to provide equal service to Plaintiff's members who are Black, with the purpose of discouraging people such as Plaintiff's Black members from patronizing the hotel.

17. Unless Defendant is restrained and enjoined from the conduct alleged above, it will continue to engage in it, and will continue to discriminate against Plaintiff and other Black members of Plaintiff's organization.

18. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, monetary loss based on lower participation at Plaintiff's Homecoming events.

19. Defendant intentionally, knowingly, and willfully discriminated against Plaintiff and its members on racial grounds, and with a reckless disregard of their federally protected civil rights, and with a knowing and reckless disregard of their rights under Md. State Gov't Code § 20-304. In addition, Defendant intentionally, knowingly, and willfully refused to cease and desist from its discriminatory conduct when Plaintiff requested that it and its members be treated equally and on the same basis as other customers. Because Defendant has discriminated in an intentional, knowing, and willful manner, the court should impose punitive damages against it.

20. An actual controversy exists between Plaintiff and Defendant as to whether Defendant's unequal treatment of plaintiffs violates the Civil Rights Act of 1964, 42 USCA § 2000a; 42 U.S.C.A. § 1981; and Md. State Gov't Code § 20-304.

21. It is necessary and appropriate for the court to issue a declaration of rights in this case in order that the parties can have a clear statement as to their respective rights, and so that future litigation over similar incidents can be avoided. In this regard, Plaintiff has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiff requests relief as follows:

1. Immediate issuance of a temporary restraining order, followed by a preliminary injunction, and ultimately by a permanent injunction preventing defendants, or any of them, from

discriminating against Plaintiff in violation of 42 U.S.C.A. § 2000a; 42 U.S.C.A. § 1981, or Md. State Gov't Code § 20-304;

    2. A declaration of rights declaring that Defendant's conduct as alleged in this complaint violates such statutes;

    3. An award of compensatory damages;

    4. An appropriate award of punitive damages sufficient to punish Defendant and deter it from again engaging in the conduct alleged above;

    5. An award of costs, including attorney's fees; and

    6. The court grant Plaintiff such other and further relief as the court deems proper.

## JURY DEMAND

Plaintiff respectfully requests trial by jury.

    Respectfully submitted,

*/S/ John T. Brennan*
John T. Brennan, Esq.
The Brennan Law Firm, LLC
1997 Annapolis Exchange Parkway
Suite 300
Annapolis, MD 21401
(410) 266-3970
(410) 721-4284 fax
tbrennan@brennan-law.us

*Attorney for Plaintiff*